**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| PATRICIA BRANTLEY, | ) | |
| GRACE STRANEY, and | ) | |
| GRACE KINARD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action |
| v. | ) | File No. **2:21-cv-12** |
| | ) | |
| CITY OF JESUP, GEORGIA, | ) | **JURY TRIAL DEMANDED** |
| WILLIAM MICHAEL "MIKE" LANE, | ) | |
| individually, and MIKE DEAL, individually, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Plaintiffs Patricia Brantley, Grace Straney, and Grace Kinard (hereinafter "Plaintiffs") submit the following Complaint for Damages and Equitable Relief against Defendant City of Jesup, Georgia ("Defendant Jesup"), Police Chief William Michael "Mike" Lane, individually ("Defendant Lane"), and City Manager Mike Deal, individually ("Defendant Deal") (collectively, "Defendants"), showing the Court as follows:

**INTRODUCTION**

1.

This is an egregious case of sexual harassment and sex discrimination. Jesup Police Department's Chief of Police, Defendant William Michael "Mike" Lane, has a pattern of preying on young female employees. Throughout his tenure as Police Chief, he has subjected Plaintiffs to repeated lewd, sexual comments and unwanted physical touchings. To date, Defendant Jesup and

1

Defendant Deal have failed to take any action to address Defendant Lane's despicable conduct and are liable to Plaintiffs under various claims outlined below.

2.

Plaintiffs assert claims for sex discrimination in violation of the Equal Protection Clause of the Constitution of the United States, asserted via 42 U.S.C. § 1983, as well as multiple Georgia tort claims including assault and negligent hiring, retention, and supervision. In addition, Plaintiffs Brantley and Straney intend to assert additional claims under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq*. ("Title VII") upon receiving a Notice of a Right to Sue from the Equal Employment Opportunity Commission ("EEOC"). Plaintiffs seek back pay and the lost economic benefits of employment, reinstatement or front pay in lieu thereof, compensatory damages, punitive damages against Defendant Lane, reasonable attorneys' fees and costs of litigation, and all other relief this Court may deem just.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.

Plaintiffs Brantley and Straney filed timely Charges of Discrimination with the EEOC, and plan to amend this Complaint to add claims arising under Title VII claims upon receipt of a Notice of a Right to Sue.

## JURISDICTION AND VENUE

4.

Plaintiffs' constitutional claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

5.

The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

6.

Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Brunswick Division of the United States District Court for the Southern District of Georgia.

## PARTIES

7.

At all relevant times, Plaintiffs were "employees" of Jesup within the meaning of Title VII, 42 U.S.C. §2000e(f).

8.

Defendant Jesup is a municipal corporation in the state of Georgia and is subject to the jurisdiction and venue of this Court. Defendant Jesup may be served with a copy of this Complaint and process by serving the City Manager, Mike Deal, at 162 E Cherry Street, Jesup, Georgia 31546.

9.

At all times relevant to this action, Defendant Jesup was Plaintiffs' "employer" as defined by Title VII, 42 U.S.C. § 2000e(b).

10.

Defendant Lane is Jesup's Chief of Police. He is sued in his individual capacity.

11.

Defendant Lane is subject to the jurisdiction of this Court and may be served with process by personal service or leaving copies of the summons and complaint at his dwelling house or usual place of abode with some person of suitable age and discretion residing there, or by delivering a copy of the summons and complaint to an agent authorized to receive service of process.

12.

Defendant Deal is Jesup's City Manager. He is sued in his individual capacity.

13.

Defendant Deal is subject to the jurisdiction of this Court and may be served with process by personal service or leaving copies of the summons and complaint at his dwelling house or usual place of abode with some person of suitable age and discretion residing there, or by delivering a copy of the summons and complaint to an agent authorized to receive service of process.

14.

At all times relevant to this action, Defendant Jesup was a state actor within the meaning of the Constitution.

15.

At all times relevant to this action, Defendant Lane and Defendant Deal were acting under color of state and local law.

**Factual Background**

***Police Chief William Michael Lane***

16.

Defendant Lane began working for the Jesup Police Department on or around 1992 as a

patrol officer.

17.

He subsequently was promoted to Sergeant and then Lieutenant.

18.

In 2018, Defendant Lane became the Jesup Police Department's Chief of Police.

19.

Not long after Plaintiffs began working for Defendant Jesup, Defendant Lane began subjecting Plaintiffs to severe and pervasive sexual harassment and sex discrimination as outlined below.

### *Plaintiff Patricia Brantley*

20.

Patricia Brantley began her employment with the Jesup Police Department as a Police Officer in March 2018.

21.

Beginning in February 2019 through the end of her employment in November 2020, Defendant Lane subjected Ms. Brantley to a sexually hostile working environment and disparate treatment because of her gender.

22.

On February 21, 2019, Defendant Lane told Ms. Brantley that he had a crush on her for a long time and has always wanted to have sex with her. Defendant Lane proceeded to ask Ms. Brantley if she would consider having sex with him. Ms. Brantley turned him down, but Defendant Lane proceeded to say: "We don't have to fuck, I just want to eat your pussy."

23.

Ms. Brantley continued to decline Defendant Lane's offer; however, he proceeded telling her, among other things:

- "I don't want to fuck you. I just want to eat your pussy. I'm good at it."

- "I don't have to fuck you, just eating your pussy is satisfying enough for me."

- "This old man can eat pussy."

24.

Ms. Brantley reported this incident to Sergeant Ray Boyles but explained that she was too nervous to file a formal complaint because she believed she (and Sergeant Boyles) would get fired for reporting the Police Chief's misconduct. Instead, Ms. Brantley attempted to avoid being alone with Defendant Lane going forward. However, this proved to be difficult.

25.

Defendant Lane required that Ms. Brantley hug him and be kissed on her face whenever they saw one another.

26.

These hugs also led to Defendant Lane groping Ms. Brantley's body.

27.

Ms. Brantley attempted to avoid seeing Defendant Lane since this conduct was unwelcome, and even left her body armor on to avoid being groped.

28.

However, when Ms. Brantley avoided Defendant Lane, he asked her "why are you being shady?" and criticized her for avoiding him.

29.

Furthermore, Defendant Lane proceeded to subject Ms. Brantley to inappropriate sexual comments throughout her employment and explicitly asked to perform oral sex on her despite her continuing to reject his advances.

30.

When Ms. Brantley declined Defendant Lane's advances, he persisted in offering oral sex and would repeat how he is good at "eating pussy."

31.

Defendant Lane harassed Ms. Brantley to have sex with him on other occasions through her employment.

32.

On or about December 2019 or January 2020, when Ms. Brantley was on light duty restrictions, Defendant Lane told Ms. Brantley that she was going to be his "personal bitch" and had her drive him around in a work vehicle to perform his personal errands.

33.

While they were driving in a work vehicle together, Defendant Lane directed Ms. Brantley to drive him to the "Country Club."

34.

Defendant Lane then directed Ms. Brantley to drive down a driveway of a house, owned by Sidney and Rebecca Steverson, and park outside the house.

35.

Defendant Lane pointed to a large shop in the backyard, and shared: "That's my friend's

shop. It's got a bedroom up top. We can go upstairs and fuck. No one will ever know we were there."

36.

Ms. Brantley continued driving, ignoring these comments, and proceeded to take Defendant Lane back to the police station.

37.

Defendant Lane persisted during the car ride, now telling Ms. Brantley that they can go to Defendant Jesup's City Manager Mike Deal's cabin to have sex. Ms. Brantley told him no.

38.

In December 2019, while taking a group picture in the courtroom, Defendant Lane stood behind Ms. Brantley and touched her buttocks without her consent. Ms. Brantley immediately moved away from Defendant Lane after the group picture was taken, and Defendant Lane laughed.

39.

Defendant Lane also asked Ms. Brantley inappropriate questions about her dating life.

40.

Defendant Lane also physically touched Ms. Brantley without her consent.

41.

On June 25, 2020, Ms. Brantley was present for requalification day at the shooting range. Defendant Lane approached Ms. Brantley and directed her to "aim for the titties," and proceeded to place his hand on the top of her breasts, and moved them back and forth, again telling her to "aim for the titties."

42.

In July 2020, Defendant Lane began treating Ms. Brantley less favorably when he discovered that she was in a relationship with another man. He told her, among other things, "I ain't believing you will sleep with him and won't even consider sleeping with me."

43.

Defendant Lane began retaliating against her for rejecting his advances and refused to speak with her.

44.

Ms. Brantley resigned from employment in November 2020.

45.

Ms. Brantley resigned because she could no longer tolerate being subjected to sexual harassment and sexual assault.

46.

After Ms. Brantley resigned, on November 20, 2020, she made a formal complaint with Wayne County Sheriff's Office regarding Defendant Lane's sexual harassment and sexual battery.

***Plaintiff Grace Kinard***

47.

Grace Kinard began her employment with the Jesup Police Department as a Police Officer in July 2017.

48.

Throughout Ms. Kinard's employment, she reported to Defendant Lane.

49.

Defendant Lane made hugging and kissing a requirement of Ms. Kinard's job.

50.

Nearly every day that Ms. Kinard saw Defendant Lane, he required that she hug and kiss him.

51.

If Ms. Kinard avoided Defendant Lane (which she often tried to do), he then called her out and said things like: "Oh, you didn't come talk to me."; "You didn't give me a hug this morning."; "What is your problem?"; and "Do you have a problem with my department?".

52.

When Defendant Lane hugged Ms. Kinard, he hugged her tightly and for a long period of time.

53.

Defendant Lane also kissed Ms. Kinard on the cheek.

54.

Once Ms. Kinard got divorced in February 2019, which Defendant Lane was aware of, he ramped up the sexual harassment and asked her outright: "Are you going to fuck me now that you're divorced?" Ms. Kinard told him no.

55.

On one occasion, Defendant Lane required that Ms. Kinard give him a kiss in order to leave the office. Defendant Lane blocked her in his office so she could not leave and put his tongue in her mouth. This conduct was unwelcome.

56.

On more than ten occasions throughout her employment, Defendant Lane groped Ms. Kinard by touching her buttocks and/or her breasts.

57.

Defendant Lane also pried into Ms. Kinard's dating life and asked her personal questions, including whether she was dating, whether her boyfriend was cheating on her, and whether the relationship was going to work.

58.

Defendant Lane also claimed to Ms. Kinard that her boyfriend was cheating on her and said: "So you might as well just go ahead and sleep with me because he's not being faithful to you."

59.

On approximately three other occasions during Ms. Kinard's employment, Defendant Lane placed his hand on her thigh and rubbed her legs.

60.

Defendant Lane subjected Ms. Kinard to countless sexually inappropriate comments throughout her employment, including but not limited to the following statements:

- "I want to eat your pussy so bad."

- "I want to know what you taste like."

- "I can [perform oral sex] for hours. I want to stay down there for hours."

- "I don't need to have sex with you, but I want to."

- "You don't need to reciprocate unless you want to."

- "We can go to a house in the Country Club to have sex."

- "We can park where nobody can see us and fuck real quick and then go back to work."

- "Your breasts are small and perky."

61.

When Defendant Lane pressured Ms. Kinard to engage in sex with him, he frequently claimed that she "owed" him for having the job at the Jesup Police Department.

62.

From February 2019 through July 2019, Defendant Lane offered to perform oral sex on Ms. Kinard at least a few times a month.

63.

From February 2019 through July 2019, Defendant Lane also solicited Ms. Kinard to engage in sex with him at Defendant Jesup's City Manager Mike Deal's cabin.

64.

Defendant Lane told Ms. Kinard: "I'm allowed to use his cabin whenever and for whatever I want. Mike is okay with it."

65.

Defendant Lane also encouraged Ms. Straney and Ms. Kinard to engage in a threesome with him and claimed he never did that before and wanted to "check that off the list."

66.

Ms. Kinard resigned from employment in July 2019.

67.

Ms. Kinard resigned because she could no longer tolerate being subjected to sexual harassment and sexual assault.

***Plaintiff Grace Straney***

68.

Grace Straney began her employment with the Jesup Police Department as a secretary in January 2018.

69.

Ms. Straney reported directly to Defendant Lane in his capacity as Police Chief.

70.

At the beginning of her employment, Defendant Lane repeatedly complimented Ms. Straney on her appearance, telling her that she looked nice and that her hair looked good.

71.

Ms. Straney's husband was in the military. When Defendant Lane learned that her husband left for deployment, he began to physically touch her at work, oftentimes rubbing her shoulders, groping her body, and requiring hugs on a near-daily basis.

72.

Throughout her employment, Ms. Straney was required to hug Defendant Lane as a part of her job.

73.

If Ms. Straney did not stop by Defendant Lane's office, he would come to her desk for a hug, or he would stand in the doorway to the kitchen area (visible to Ms. Straney's desk) and

encourage her to come in the kitchen, where she was then required to hug him.

74.

On more than twenty occasions, when Defendant Lane hugged Ms. Straney, he grabbed her buttocks with both of his hands, and oftentimes emitted a vulgar noise.

75.

Defendant Lane also frequently tried to kiss Ms. Straney on the lips after he hugged her. When this happened, Ms. Straney turned her head to avoid a kiss on the lips, and so Defendant Lane typically kissed her cheek.

76.

On one occasion, in the Summer of 2020, Ms. Straney was unable to turn her head quickly enough, and Defendant Lane kissed Ms. Straney on her lips. This conduct was unwelcome.

77.

In early 2019, Defendant Lane called Ms. Straney into his office to fix something on his computer. He proceeded to ask Ms. Straney if she "ever thought about it" (referring to something sexual) and then placed his right hand on her inner leg, moving his hand up her dress to her panty line, and then stroked her genital area through her panties with his thumb.

78.

During this sexual assault, Defendant Lane told Ms. Straney: "We don't have to have sex, I can just eat your pussy. I am the best at it. I can do it for hours."

79.

Ms. Straney froze and moved backwards as best as she could, exiting Defendant Lane's office as fast as she could.

80.

After this sexual assault, Defendant Lane proudly bragged to a male police officer that he put his hands up Ms. Straney's dress.

81.

Because Defendant Lane sexually assaulted Ms. Straney at work while she was wearing a dress, and repeatedly played with her hair at work, she stopped wearing dresses to work and began wearing her hair in a bun to avoid Defendant Lane's misconduct. She also stopped wearing makeup.

82.

Almost daily throughout Ms. Straney's employment, Defendant Lane pressured Ms. Straney to have sex with him.

83.

Defendant Lane repeatedly subjected Ms. Straney to inappropriate sexual comments, including but not limited to the following statements:

- "I've done so much for you, you can do something for me."
- "Do you ever think about being with an older man?"
- "I wish I was younger, do you think we would have a chance?"
- "Give [sex or oral sex] to me as a retirement gift."
- "We don't have to sleep together you can just let me eat your pussy. I'm the best at it; there's no one better than me at it."

84.

On countless occasions throughout her employment, Defendant Lane repeatedly and

persistently offered to perform oral sex on Ms. Straney.

85.

Despite Ms. Straney's clear indication that she was not interested, Defendant Lane continued subjecting Ms. Straney to inappropriate sexual comments, shoulder rubs, hugs, butt grabs, and played with her hair—one time taking her hair down from a bun—without her permission.

86.

When Defendant Lane rubbed Ms. Straney's shoulders, he made comments like: "Do you like that?" and "Imagine what I can do for the rest of your body, you just have to meet me."

87.

More than twenty-five times, Defendant Lane invited Ms. Straney to have sex at a secluded cabin that "no one knows about" and said they could be together the entire night.

88.

Upon information and belief, Defendant Lane was referring to Defendant Jesup's City Manager Mike Deal's cabin.

89.

Defendant Lane also asked Ms. Straney personal questions and made it clear that she had no privacy. He frequently questioned her about who was at her house the previous night, and said her home was being watched for him by members of Defendant Jesup's Police Department.

90.

In the Summer of 2019, Ms. Straney shared with members of the police department, including Defendant Lane, that she was pregnant.

91.

Defendant Lane asked Ms. Straney: "Which officer's baby is it?".

92.

On January 28, 2020, when Ms. Straney was eight months pregnant, Defendant Lane sent an email to the entire police department for Ms. Straney's birthday and claimed that Ms. Straney was still trying to figure out who was the "baby daddy." This was humiliating for Ms. Straney.

93.

Defendant Lane's email reads as follows: "Everyone join me in wishing secretary Grace a Happy Birthday today!! She needs to know she is loved so please call her!! She has been under a lot of stress lately with Mrs. Angie being out on top of still hoping to figure out who's the baby's Daddy!! I wish she would hurry up and figure it out so we can see who won the pool we have going on who's the baby's Daddy. I could use the extra money!! Chief Mike Lane."

94.

Throughout Ms. Straney's pregnancy, Defendant Lane frequently asked her: "When will you quit? I don't expect you to come back after the baby. Let me know when to post your job."

95.

Just a few days after Ms. Straney's baby was born in late February, Defendant Lane continued to tell Ms. Straney that she should quit.

96.

Ms. Straney did not quit, and upon her return to work, Defendant Lane began to subject her to disparate treatment and retaliated against her.

97.

Defendant Lane wrote Ms. Straney up for pretextual reasons, and often threatened to write her up for untrue or bogus reasons.

98.

Furthermore, Defendant Lane frequently marginalized Ms. Straney's job duties, and subjected her to demeaning and sex-stereotyped comments because she was a female secretary.

99.

For example, Defendant Lane told Ms. Straney: "Why go to college so you can become a secretary?"

100.

Defendant Lane also refused to allow Ms. Straney to have a second job, even though he allowed men to have second jobs while working for Defendants.

101.

Defendant Lane frequently referred to Ms. Straney as "dumb," "ignorant," and a "dumb blonde" and encouraged others to do the same.

102.

Ms. Straney resigned from her employment in September 2020.

103.

Ms. Straney resigned because she could no longer tolerate being subjected to sexual harassment and sexual assault.

***Defendant Jesup's Knowledge Regarding Defendant Lane's History of Sexual Harassment***

104.

Throughout Ms. Brantley's employment, and pursuant to Defendant Jesup's sexual harassment policy, she reported the sexual harassment that she was subjected to by Defendant Lane on multiple occasions to ranking officers Sergeant Ray Boyles, Sergeant Todd Brown, Sergeant Dave Leighton, and Corporal David Parker.

105.

Despite Ms. Brantley's reports of sexual harassment, no action was taken to remedy the sexual harassment.

106.

Defendant Jesup's City Manager Mike Deal knew or should have known of Defendant Lane's propensity for engaging in inappropriate conduct with females, including female employees of Defendant.

107.

Upon information and belief, City Manager Mike Deal has been aware that Defendant Lane offers to have sex with female employees in his cabin.

108.

On November 20, 2020, Ms. Brantley made a formal complaint to Wayne County Sheriff's Office regarding Defendant Lane's sexual harassment and sexual battery.

109.

After Defendant Deal became aware of Ms. Brantley's formal complaint of sexual harassment, and Liberty County's investigation of Defendant Lane (discussed *infra*), he refused to

discipline or place Defendant Lane on leave, which is required by Jesup Standard Operating Procedure ("SOP").

110.

On January 8, 2021, Ms. Brantley asked Defendant Deal why Defendant Lane was not put on administrative leave since he was under investigation, as required by the SOP.

111.

In response, Defendant Deal said, "That's my decision," and claimed administrative leave only would occur if someone was arrested.

112.

After this conversation, Defendant Deal changed the SOP to remove the leave requirement for employees under investigation.

113.

Defendant Deal changed this provision of the SOP to protect Defendant Lane.

114.

In accordance with Jesup's Code of Ordinances, Defendant Deal is the highest-ranking City official with final policymaking authority to promote, appoint, discipline, and take other personnel actions affecting employees of Jesup, including Defendant Lane.

115.

Despite all that occurred, Defendant Lane was never disciplined for his sexual harassment of Ms. Brantley.

*Investigation Regarding Sexual Harassment*

116.

In December 2020, Liberty County Sheriff's Office conducted an investigation into Ms. Brantley's claims of sexual harassment and sexual assault by Defendant Lane.

117.

Defendant Lane was interviewed by Liberty County Sheriff's Office as part of its investigation.

118.

According to the Liberty County investigative report: "Chief Lane told us that looking back, he had some conversations with Ms. Brantley that could be viewed as inappropriate. By his own admission, Chief Lane did have conversations of an inappropriate sexual nature with a subordinate, namely Patricia Brantley. Chief Lane told us that he did, in fact, talk to Ms. Brantley about performing oral sex for hours, although he said that it was not directed at her, nor was it a request of her. Rather, he explained that he was talking to Ms. Brantley about another female that had expressed interest in him."

119.

The Liberty County investigation ultimately concluded that Defendant Lane had inappropriate conversations of a sexual nature with Ms. Brantley on several occasions by his own admission and in violation of the City of Jesup's sexual harassment policy.

120.

The Liberty County investigation further concluded that Ms. Brantley notified more than one supervisor over the course of two years about the sexual harassment, and the supervisors failed

to report the complaints.  This is also in violation of the City of Jesup sexual harassment policy.

<u>COUNT I</u>
**SEX DISCRIMINATION IN VIOLATION OF THE
EQUAL PROTECTION CLAUSE OF THE CONSTITUTION
(Asserted via 42 U.S.C. § 1983)**
*Plaintiffs Brantley, Straney, and Kinard Against All Defendants*

121.

Paragraphs 1 through 120 are incorporated herein by reference.

122.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiffs to equal protection under the laws, including equal protection with respect to gender.

123.

The Equal Protection Clause of the Fourteenth Amendment provides a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment.

124.

Defendant Lane violated Plaintiffs' rights to equal protection by, *inter alia*, subjecting Plaintiffs to a sexually harassing and hostile working environment because of their sex, and subjected them to sex discrimination.

125.

Defendant Deal had actual or constructive knowledge of the serial sexual harassment of subordinate women by Defendant Lane and on information and belief approved the conduct of Defendant Lane. Said conduct was a custom, usage or practice of Defendant Jesup, promulgated by Defendant Lane and supported and ratified by City Manager Deal. Both Defendant Lane and

City Manager Deal were policy makers for the Defendant Jesup.

126.

Defendant Jesup violated Plaintiffs' rights to equal protection by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct even though they knew of, and were on notice of, Defendant Lane's sexual harassment of Plaintiffs and others.

127.

Defendants' conduct constitutes unlawful sexual harassment and discrimination, based upon gender, in violation of the Equal Protection Clause. Additionally and alternatively, Defendants unlawful conduct constitutes sexual harassment culminating in adverse employment action against Plaintiffs.

128.

Defendants undertook all of the unlawful conduct giving rise to Plaintiffs' claims while acting under color of State and local law, regulations, and customs or usages.

129.

Defendant Lane, individually, violated clearly established law prohibiting sexually harassing a subordinate in the workplace.

130.

Defendant Lane undertook his unlawful conduct intentionally, recklessly and maliciously with respect to Plaintiffs and their federally protected rights, entitling them to recover compensatory and punitive damages against him, individually.

131.

In failing to take any corrective action despite knowing of Defendant Lane's unlawful

conduct towards Plaintiffs, Defendant Jesup and Defendant Deal ratified Defendant Lane's conduct, and also exhibited deliberate indifference to Plaintiffs' equal protection rights.

132.

Defendant Lane, a final policymaker for Defendant Jesup's Police Department, violated clearly established law prohibiting sex discrimination in public employment when he, *inter alia*, engaged in discrimination and sexual harassment and constructively discharged Plaintiffs.

133.

For purposes of this lawsuit and all acts and omissions for which Plaintiffs complain, Defendant Deal was a final policymaker for Defendant Jesup. Defendant Deal violated clearly established law prohibiting sex discrimination in public employment when he had actual or constructive knowledge of the ongoing conduct of Defendant Lane, facilitated it, refused to take action to stop it, and ratified it.

134.

Defendants' actions were willful, wanton, and intentionally directed to harm Plaintiffs.

135.

Defendants' actions were reckless and were taken in willful disregard of the probable consequences of their actions.

136.

As a direct and proximate result of the Defendants' violations of the Equal Protection Clause, Plaintiffs have suffered damages including lost wages, lost benefits, emotional distress, inconvenience, loss of benefits, humiliation, and other indignities.

**COUNT II**
**ASSAULT**
***Plaintiffs Brantley, Straney, and Kinard Against Defendant Lane Only***

137.

Paragraphs 1 through 120 are incorporated herein by reference.

138.

Defendant Lane's sexual misconduct and actions against each Plaintiff as described above constitute assault.

139.

As a result of Defendant Lane's unlawful actions, Plaintiffs suffered emotional distress, inconvenience, humiliation, and other indignities.

**COUNT III**
**BATTERY**
***Plaintiffs Brantley, Straney, and Kinard Against Defendant Lane Only***

140.

Plaintiffs incorporate by reference paragraphs 1 through 120 of the Complaint.

141.

Defendant Lane's conduct and actions alleged herein toward Plaintiffs amounted to the unwanted and offensive touching of Plaintiffs by Defendant Lane, constituting a battery.

142.

As a result of Defendant Lane's unlawful actions, Plaintiffs suffered emotional distress, inconvenience, humiliation, and other indignities.

<u>**COUNT IV**</u>
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
***Plaintiffs Brantley, Straney, and Kinard Against All Defendants***

143.

Paragraphs 1 through 120 are incorporated herein by reference.

144.

Defendant Lane intentionally, maliciously, wantonly and in gross and reckless disregard for Plaintiffs' health and safety, engaged in extreme and outrageous conduct when he subjected Plaintiffs to embarrassment, humiliation, degradation, and ridicule by sexually harassing them, and touching their bodies without consent, thereby causing Plaintiffs to suffer extreme emotional distress, mental anguish, humiliation, and other indignities.

145.

Defendant Lane's conduct toward Plaintiffs was objectively malicious, wanton, and wholly incompatible with the standards of society.

146.

Based on its actual and constructive knowledge of Defendant Lane's sexual harassment and his history and propensity for same, Defendant Jesup condoned, adopted, and ratified Defendant Lane's conduct, making it liable for Defendant Lane's intentional infliction of emotional distress upon Plaintiffs.

147.

As a result of Defendants' unlawful actions, Plaintiffs suffered emotional distress, inconvenience, humiliation, and other indignities.

**COUNT V**
**INVASION OF PRIVACY**
*Plaintiffs Brantley, Kinard, and Straney Against All Defendants*

148.

Paragraphs 1 through 120 are incorporated herein by reference.

149.

The tort of Invasion of Privacy is actionable under Georgia law upon proof that an individual unreasonably intruded into another person's private concerns in a manner that "would be offensive or objectionable to a reasonable person." *Troncalli v. Jones*, 237 Ga. App. 10, 14, 514 S.E.2d 478, 482 (1999).

150.

Defendant Lane's actions described above involving unwanted sexual and inappropriate touching of Plaintiffs constituted the tort of Invasion of Privacy under Georgia law.

151.

At all relevant times, Defendant Lane was acting in the course and scope of his employment with Defendant Jesup, making Defendant Jesup vicariously liable for the actions of the individual defendants under a theory of *respondeat superior.*

152.

Based on Defendant Jesup's actual and constructive knowledge of Defendant Lane's misconduct, and his history and propensity for the same, coupled with their failure to intercede on Plaintiffs' behalf, Defendants' condoned, adopted, and ratified Defendant Lane's conduct, making Defendants also liable for his actions.

153.

As a result of Defendants' unlawful actions, Plaintiffs have suffered emotional distress, inconvenience, humiliation, and other indignities.

## COUNT VI
## NEGLIGENT RETENTION AND/OR NEGLIGENT SUPERVISION
### *Plaintiffs Brantley, Straney, and Kinard Against Defendant Jesup Only*

154.

Paragraphs 1 through 120 are incorporated herein by reference.

155.

Throughout Plaintiffs' employment, Defendant Lane regularly and repeatedly subjected Plaintiffs to sexual advances, sexual innuendos, offensive touching, and other forms of sexual harassment.

156.

Upon information and belief, Defendant Jesup was aware of Defendant Lane's sexual harassment of Plaintiffs; yet, Defendant Jesup continued to require Plaintiffs to report to, and interact with, Defendant Lane, and did not discipline Defendant Lane for his unlawful conduct.

157.

Defendant Lane's continual sexual harassment, assault, and battery of Plaintiffs created an intimidating, hostile, and offensive working environment for them.

158.

Defendant Jesup failed to take any remedial action toward Defendant Lane, even after Plaintiff Brantley complained of Defendant Lane's sexual harassment on numerous occasions, and

even after there was an investigation with a finding of sexual harassment by Defendant Lane against Plaintiff Brantley.

159.

Defendant Lane continuously harassed Plaintiffs until they were constructively discharged.

160.

Moreover, Defendant Jesup took no steps to correct the sexually harassing work environment that existed.

161.

The sexually harassing work environment includes, but is not limited to, inappropriate comments and touching by Defendant Lane.

162.

Defendant Jesup continues to employ Defendant Lane when it actually knows, constructively knew, or in the exercise of reasonable care should have known, of Defendant Lane's prior history of, reputation, and propensity for, sexual harassment directed toward Plaintiffs and/or other employees.

163.

Notwithstanding Defendant Jesup's actual and constructive knowledge of Defendant Lane's prior history of, reputation, and propensity for, sexual harassment, Defendant Jesup negligently supervised Defendant Lane, failed to intercede on Plaintiffs' behalf, and negligently retained Defendant Lane, thereby ratifying, condoning, and adopting his conduct, making Defendant Jesup liable for the negligent supervision and retention of Defendant Lane.

## COUNT VII
## BREACH OF LEGAL DUTY UNDER O.C.G.A. § 51-1-6
### *Plaintiffs Brantley, Straney, and Kinard Against All Defendants*

164.

Paragraphs 1 through 120 are incorporated herein by reference.

165.

Defendants' action and omissions stated in this complaint violate public and private duties guaranteed to Plaintiffs under O.C.G.A. § 51-1-6.

166.

In addition to violating their duties to Plaintiffs, Defendants committed intentional torts upon each Plaintiff.

167.

All of the acts and omissions complained of in this lawsuit are such acts or omissions as those contemplated by O.C.G.A. § 51-1-6 to be tortious acts against Plaintiffs.

## COUNT VIII

## PUNITIVE DAMAGES UNDER O.C.G.A. § 51-12-5.1
### *Plaintiffs Brantley, Straney, and Kinard Against All Defendants*

Paragraphs 1 through 120 are incorporated herein by reference.

168.

All of Defendants' unlawful conduct set forth herein was intentional, willful, malicious, and conducted with the deliberate intent to harm Plaintiffs, or was done with reckless disregard for Plaintiffs and their rights.

169.

Accordingly, Defendants are liable to Plaintiffs for punitive damages.

**COUNT IX**
**ATTORNEYS' FEES AND COSTS UNDER O.C.G.A. § 13-6-11**
*Plaintiffs Brantley, Straney, and Kinard Against All Defendants*

170.

Paragraphs 1 through 120 are incorporated herein by reference.

171.

By their actions described above, and by their stubborn litigiousness prior to and during this lawsuit, Defendants acted in bad faith, were stubbornly litigious, and put Plaintiffs through unnecessary trouble and expense.

172.

Thus, under O.C.G.A. § 13-6-11, Plaintiffs are entitled to recover their attorneys' fees and expenses incurred in prosecuting this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand a **TRIAL BY JURY** and that the following relief be granted:

A.     That this Court take jurisdiction of this matter;

B.     That process be served;

C.     That Plaintiffs be awarded a declaratory judgment that Defendants violated the Constitution and Georgia law, as described above;

D.     That this Court enter a permanent injunction, prohibiting Defendants from engaging in unlawful employment practices, including unlawful sexual harassment,

assault, and negligent retention;

E.      That this Court award Plaintiffs their full back pay and reinstatement or front pay in

        lieu thereof, in an amount to be determined at the trial of this case;

F.      Prejudgment interest and post-judgment interest;

G.      That this Court award compensatory damages in an amount to be determined by the

        trier of fact;

H.      That this Court award punitive damages against Defendant Lane in an amount to be

        determined by the enlightened conscience of the jury to be sufficient to punish

        Defendant Lane for his conduct toward Plaintiffs and deter him from similar

        conduct in the future;

I.      That this Court award Plaintiffs their costs in this action and reasonable attorneys'

        fees pursuant to 42 U.S.C. § 1988, and other applicable laws;

J.      That this Court grant Plaintiffs the right to have a trial by jury on all issues triable to

        a jury; and

K.      That this Court grant such additional relief as this Court deems proper and just.

Respectfully submitted this 1st day of February 2021.

                                          By:     /s/ Edward D. Buckley
                                                  Edward D. Buckley
                                                  Georgia Bar No. 092750
                                                  edbuckley@buckleybeal.com
                                                  Rachel Berlin Benjamin*
                                                  Georgia Bar No. 707419
                                                  rberlin@buckleybeal.com
                                                  * To be admitted
                                                  BUCKLEY BEAL LLP
                                                  600 Peachtree Street NE, Suite 3900
                                                  Atlanta, GA  30308
                                                  Telephone: (404) 781-1100

Facsimile: (404) 781-1101

Andrew Lampros
Georgia Bar No. 432328
Gordon Van Remmen
Georgia Bar No. 215512
**HALL & LAMPROS, LLP**
400 Galleria Pkwy SE
Suite 1150
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477
alampros@hallandlampros.com
gordon@hallandlampros.com

Joseph R. Padgett
Georgia Bar No. 872672
**RODEN LAW**
333 Commercial Drive
Savannah, GA 31406
Telephone: (912) 303-5850
Facsimile: (912) 303-5851
jpadgett@rodenlaw.com

*Counsel for Plaintiffs*